Adams *v.* Mahnken.

---

JEREMIAH E. ADAMS

*v.*

CORD MAHNKEN et al.

Recovery of premium paid in violation of the usury laws held to be barred by the statute of limitations, one of the firm by which it was taken having lived in this state for over six years.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. J. Alward,* for complainant.

*Mr. A. C. Hartshorne,* for answering defendant (Mahnken).

THE CHANCELLOR.

The object of this suit is to bring the defendants, who, from April, 1871 to April, 1882, were partners in the wholesale grocery business in the city of New York, under the firm of Mahnken & Moorhouse, to an account with the complainant, who, during that period, was their customer and bought goods of them to sell at retail in his store in Elizabeth, in this state, in respect to certain business transactions which took place between them during the before-mentioned period.

The bill alleges that about the 16th of August, 1872, the complainant borrowed $2,000 of the defendants on a usurious contract between him and them for the payment by him to them of a premium of $500 for the loan; that the payment of the $2,500, with interest at seven per centum per annum, was to be secured by his bond and mortgage of real property of his in the city of Elizabeth; that the loan, which was of $2,000 only, was made, and the bond and mortgage for $2,500 were given accordingly; that in January, 1875, the complainant had paid up the interest on the bond and mortgage and $500 of the principal; that then a new bond and mortgage of the same property for $2,000 were given instead of the bond and mortgage for $2,500, and the last-mentioned mortgage was canceled of record; that the complainant afterwards, in August, 1878, on account of and in further dealings between him and the defendants, gave them another mortgage (for $1,500 and interest) upon the same property and other land also in the city of Elizabeth; that after the giving of the last-mentioned bond and mortgage the complainant continued to deal with the defendants; that on or about the 30th day of March, 1881, he had paid up all the interest on the two mortgages of $2,000 and $1,500 respectively; that he was then desirous of paying his entire indebtedness to the defendants and of redeeming his lands from the lien of those mortgages; that he was then the owner of an order given by one William H. Adams upon his attorney, Allen C. Clark, of Washington, D. C., calling for the sum of $5,500, which order was accepted by Clark, and was considered good; that the complainant, wishing to dispose of that order and realize the amount due thereon, offered it to the

defendants, and they made due inquiry about it and agreed with him that they would take it in payment of the mortgages and his further and other indebtedness to them, if any existed, and pay him the difference between the amount of the order and the amount which should be found due upon a proper statement of the account between him and them; and that as part payment of that difference they paid him, on the 30th of March, 1881, $450, and promised to give him credit for the order on their books and state the account, and account to him for the balance of that difference, and deliver up to him the bonds and mortgages receipted and canceled, and execute to him discharges of the mortgages. The defendants dissolved their copartnership in April, 1882. Mahnken bought out Moorhouse's interest in the firm's property and assumed the payment of the debts. Mahnken has answered. Moorhouse has not. The former, in his answer, states that the $2,500 mortgage was paid off before the $2,000 one was given, and denies that the order was given in payment of the complainant's indebtedness, but alleges that it was given as additional security therefor. The only questions discussed upon the hearing were whether the $2,500 bond and mortgage were usurious, and whether the order was taken in payment of the complainant's indebtedness to the firm or merely as collateral security therefor.

That the loan of $2,000 was made upon an agreement that in consideration thereof the complainant should pay to the defendant a premium of $500, is established by the proof. It is urged, however, on the part of Mahnken, that that mortgage was paid off in full before the $2,000 mortgage was given, and that the latter was given not for part of the money secured by the $2,500 mortgage but for an entirely different indebtédness. This claim is established by the evidence. The $2,500 mortgage was paid off by payments made directly thereon before the $2,000 mortgage was given. The last payment (which was of $150.13) was made January 9th, 1875. The $2,000 mortgage was given January 15th, 1875. When it was given, there were $2,548.58 due from the complainant to the defendants on book-account. No part of the money secured by the $2,500 mortgage was in any

way included in the $2,000 mortgage. As just stated, the last payment on account of the $2,500 mortgage was made January 9th, 1875. The bill was not filed until October 3d, 1882, nearly eight years after that payment. Recovery of the premium paid upon the loan of $2,000 secured by that mortgage is barred by limitation. Moorhouse has lived in this state ever since the mortgage was given. *Bruce* v. *Flagg, 1 Dutch. 219.*

Nor is the claim that the order was given and accepted in payment of all indebtedness of the complainant to the defendants established. When that order was given (it is dated March 19th, 1881) the complainant owed the defendants a large sum of money (about $5,340) upon the two mortgages of $2,000 and $1,500 respectively, and upon a note of $964.14, payable on demand, given to them by him April 27th, 1880, on settlement for a balance of account due them March 1st, 1880, and $502.57 for a balance of account due them from him when the order was given. At the time when the note for $964.14 was given, the complainant's credit with the firm of Mahnken & Moorhouse was not good. As conditions of further credit it was then agreed between him and them that the balance of his indebtedness thereafter to be incurred should not exceed $300; that he should pay all bills promptly within thirty days after they had been contracted, and should pay $50 a month upon that note. From about the 1st of November, 1880, until the time when the order was given, he was unable to purchase any goods from them on credit, but was required to pay on delivery. From the time when the order was given to the dissolution of the firm he again had credit, and at the latter date he owed them on account for goods sold and cash advanced from August 18th, 1880 to August 16th, 1881, a balance of $1,121.11.

According to the weight of the evidence, the order was given as additional security for his indebtedness to the firm. It was drawn by William H. Adams upon Allen C. Clark, his attorney, and accepted by the latter. It directed the drawee, after deducting his fees and incidental expenses in the prosecution of the drawer's claims against the District of Columbia before the United States court of claims, and also $1,100, the amount of a previous acceptance then outstanding, to pay to the order of

Adams v. Mahnken.

Mahnken & Moorhouse $5,500 out of any money that might be awarded to the drawer by the court of claims in his suits then pending against the District of Columbia in that court. The claim mentioned in the order was for work done in Washington by William H. Adams (the complainant's brother), as contractor for certain municipal works there, and although the contract was made and the work done by him, they were made and done on behalf of the complainant also, who was a silent partner with him therein. The $5,500 were due to the complainant for profits and money advanced for the works ; and part of the $2,000 borrowed of the defendants, which had gone into the works, was embraced in the $5,500. It will be seen that the draft was upon no existing fund. Whether it would have any value or not depended entirely upon the result of a lawsuit. The complainant and Mr. Moorhouse, indeed, both swear that the agreement between them (Mr. Mahnken appears to have been personally no party to it) was that the order was to be taken absolutely as satisfaction for the complainant's then indebtedness; and they also say that he was to receive from the firm the difference between the amount mentioned therein—$5,500—and the amount of that indebtedness. That indebtedness at the date of the order was over $5,340. They state that $450 were paid to him at about that date on account of that difference. The two sums of $5,340 and $450 together make an amount greater by nearly $300 than the amount mentioned in the order. It seems very improbable that the firm would have agreed not only to accept such an order in satisfaction of his indebtedness to them and give up the mortgage security which they held, but, in addition, to advance him $450 on account of a merely supposed difference between the amount of his indebtedness and the amount mentioned in the order. On the one hand, the complainant, who is an interested witness, and Mr. Moorhouse, who, although he is disinterested, would seem to be unfriendly to Mahnken, testify to the existence of the agreement as alleged in the bill. On the other, there is the evidence of the defendant Mahnken, who is interested, and of Mr. Jansen, the book-keeper of the firm, who is entirely disinterested, and of Edward A. Mahnken, son of the defendant Mahn-

ken. Mr. Jansen testifies that before the order was given Mr. Moorhouse, in his presence, pressed the complainant for payment, saying that they were not sufficiently secured by the mortgages and note, and said that he wanted to be better secured, and the complainant then proposed to give the order as additional security, and Mr. Moorhouse then accepted it as such. He also testifies that Moorhouse told him that he had received the order as additional security, and that the complainant was to have credit again on account of it. The order was never credited on the books of the firm, and the complainant was well aware of that fact but never complained of it. He also knew that he was charged on the books with the $450 advanced to him at the time when the order was given. He received numerous statements of account after the order was given, from which, as well as from his examination of the books, he was apprised of the fact that he was not credited with the order. He attempts to avoid the force of this fact by saying that he very seldom looked over the statements that he received because, although his home was in Elizabeth, he was in business in Washington, and adds that he was "back and forth." His business in Washington, he says, was the business of contracting for making sewers, laying pavements &c. He admits that from 1875 to the time of the commencement of this suit (October, 1882), he was in Washington but once. Edward A. Mahnken, who was a clerk of the firm, testifies that Moorhouse, when he, Mahnken, asked him whether certain goods which he was about to send to the complainant, and which the latter had bought of the firm, should be so marked as that they should not be delivered without payment of the bill therefor, as had previously, from October, 1880, been the method adopted by the firm in their dealings with the complainant, answered, "No, it is all right now; I have got more security; I have got an order on Washington." Mr. Mahnken, defendant, testifies that Moorhouse told him that the order was taken as collateral security for the payment by the complainant of his indebtedness to the firm. And here it will not be out of place to say that, although Moorhouse swears that the order was left at the store of the firm during his absence at home by reason of

illness, the complainant testifies that he gave it to Moorhouse himself at the store, and he thinks Mr. Mahnken was not present but the book-keeper was. The defendant Mahnken also testifies that after the dissolution he called on the complainant for payment of his indebtedness to the late firm and offered to deduct fifteen or twenty per cent. from the amount if the complainant would pay it, and that the latter said he would pay if he had the money. He says they referred to the Washington claim, and the complainant said that he had got nothing from it and doubted very much whether he ever would get anything; that as soon as he got that money he would settle up, but that there was no depending upon it. He also swears that Moorhouse told him that he had to give the complainant some cash, but did not say how much, to get the order. When the firm dissolved, a written agreement of dissolution was signed by Mahnken and Moorhouse. By it all the assets were assigned to the former, and bonds and mortgages are specially mentioned, the words "stocks, bonds and mortgages" having been interlined before it was signed, and therefore the attention of Moorhouse was drawn to it. He thus recognized the bonds and mortgages given by the complainant as valid existing evidences of debt, for the firm does not appear to have had any other bonds and mortgages. He sold out all his interest in the assets, including them, to Mahnken for $40,000, the latter to pay the debts. There are other weighty reasons against accepting the complainant's version of the transaction under consideration. Not only were the bonds and mortgages and notes not surrendered and the account receipted when the order was given, but there was no written evidence given of any undertaking by or on the part of the defendants to accept the order in discharge of all claims against the complainant, or to surrender the bonds and mortgages and note and receipt his account. He left the bonds and mortgages and note in the hands of the defendants after giving the order. He says, indeed, that he demanded them from Moorhouse and was put off from time to time, but he not only took no steps to obtain them but never complained that they were not delivered to him. He never demanded them from Mahnken. When the relations of the parties

to each other and the character of the order before adverted to and the conduct of the parties are considered, it seems quite clear that the order was not accepted as satisfaction but merely as additional security, and that in order to get it as security Moorhouse advanced to the complainant, for the firm, $450. On the hearing a motion was made on the part of the defendant Mahnken for leave to introduce evidence that the suit mentioned in the order has been decided adversely to the plaintiff therein, and so the order has proved to be utterly worthless. The decision upon that application was reserved until this time. The evidence would be irrelevant and immaterial. The motion, therefore, is denied. The bill will be dismissed, with costs.